Robert J. ALBANESE, William A. Byrnes, John Davis, Guy Garner, Richard Turre, and Raymond A. Noll, Plaintiffs,

v.

BERGEN COUNTY, NEW JERSEY, and Bergen County Sheriff's Department, Defendants.

No. Civ.A. 96–2168.

United States District Court, D. New Jersey.

Dec. 31, 1997.

As Amended Jan. 14, 1998.

William H. Roth, Lisa A. Frey, Kelly & Roth, Metuchen, NJ, Alan S. Kaufman, Chamberlain & Kaufman, Albany, NY, for Plaintiffs.

Edwin C. Eastwood, North Bergen, NJ, for Defendants.

## OPINION

WOLIN, District Judge.

Robert Albanese, William Byrnes, John Davis, Guy Garner, Raymond Noll, and Richard Turre ("plaintiffs") are or were dog handlers for the Bergen County Sheriff's Department. They seek to recover overtime compensation from Bergen County and the Bergen County Sheriff's Department ("defendants")[1] for the time they had to spend caring for and maintaining their dogs, uniforms, and guns. One plaintiff also seeks overtime compensation for the time he spent as a Drug Abuse Resistance Education officer. Plaintiffs move the Court to enter summary judgment on issues related to liability pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants cross-move to dismiss plaintiff Byrnes's claim that he should receive overtime compensation for the time he spent making presentations to children on preventing the use of drugs. They also move to exclude plaintiff's expert report. The Court has decided this motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiffs are or were employed as Sheriff's Officers or Corrections Officers for the Bergen County Sheriff's Department in Bergen County, New Jersey. (Pls.Decls.¶ 2).[2] Plaintiffs' regularly scheduled shifts required them to work thirty-two or forty hours for a seven-day period. (Pls.Decls.¶ 3). When plaintiffs worked more than eight hours in a day or forty hours in a week, they became eligible for and received overtime compensation at a rate of time and one-half. (Pls.Decls.¶ 3). Plaintiffs received that rate for the overtime they performed "on the clock." (Pls.Decls.¶ 3).

At some point in their respective employments for defendants, plaintiffs became police dog ("K–9") handlers: Albanese (1988 until March 1996); Byrnes (October 1992 until January 1995); Davis (September 1989 until September 1995); Garner (December 1990 until the present); Noll (September 1988 until February 1997); Turee (1989 until May 1997). (Pls.Decls.¶ 4). After being selected as K–9 handlers, defendants assigned plaintiffs dogs, and plaintiffs and their dogs attended rudimentary K–9 training. (Pls.Decls.¶ 8). At the training, instructors taught plaintiffs "the basics of police K–9 patrol work including care and maintenance of the dog, as well as obedience training, agility training, tracking, criminal apprehension, article searches, building searches, and narcotics detection." (Pls Decl. ¶ 8).[3] The instructors told plaintiffs that basic training was only initial training, and advised them that they would have to reinforce the training on a regular basis to make the dogs proficient. (Pls.Decls.¶ 8).

Moreover, the instructors explained that after plaintiffs completed training, they should house their dogs at home in order to build the bond between them and the dogs and because that practice would make them and the dogs better teams. (Gailes dep. 24:8–16). Although K–9 handlers had the choice of taking their dogs home or leaving them at the kennel, ninety percent of the handlers elected to have their dogs live with them at home. (Duffy dep. 111:18–21;

---

1. There will be times when defendants also refers to defendants' employees.

2. Each plaintiff submitted a declaration. When each declaration contains the same fact, a collective reference will be made. When a fact comes from only one declaration, the Court will refer to the specific declaration.

3. Albanese, Garner, and Turee are the only ones who received training on narcotics detection.

115:14–25). In general, plaintiffs housed their dogs with them at their homes. (Pls.Decls.¶ 10). After Albanese's first dog died, he kept his second dog in the kennel. (Albanese Decl. ¶ 10). Garner left one of his two dogs at the kennel and brought the other one home with him. (Garner Decl. ¶ 10).

The Bergen County Sheriff's Department expected that plaintiffs would follow and apply the training they received as well as maintain the good health of their dogs. (Benedetto dep. 124:11–24; Alpert dep. 51:23–25). Plaintiffs never received instructions from the Sheriff's Department about how much time to spend caring for their dogs. (Gailes 55:13–17).

During their positions as K–9 handlers, defendants paid for the food, equipment, and veterinary expenses associated with the use of the police dogs. In addition to housing their dogs, plaintiffs performed the work necessary for caring for and maintaining their dogs. (Pls.Decls.¶ 5). Such work included feeding, exercising, training, bathing, grooming, and cleaning the areas where the police dogs lived and the vehicles used to transport the dogs. (Pls. Decls. ¶¶ 5, 11; Noll Decl. ¶ 12).

Plaintiffs also arrived early for work so that they could drop the dogs off at the kennel before reporting for their assignments. On the occasions when the dogs remained in the kennel for the day, plaintiffs often had to spend time beyond their shifts tending to their dogs and cleaning the kennel. (Albanese Decl. ¶¶ 32–35; Byrnes Decl. ¶¶ 31–34; Davis Decl. ¶¶ 27–28; Garner Decl. ¶¶ 29–31; Noll Decl. ¶ 30; Turre Decl. ¶¶ 33–34). There were, however, times when plaintiff's superiors permitted them to perform some of these tasks during their regular hours. (Byrnes Decl. ¶¶ 33–34; Garnes Decl. ¶ 30; Noll Decl. ¶ 30; Turre Decl. ¶ 33).

Many of the hours spent on that work occurred during "off the clock" time, i.e., time that did not count as hours worked. (Pls.Decls.¶ 5). Plaintiffs claim that they spent "many hours over and above" their scheduled hours caring for, maintaining, and training their dogs. (Pls.Decls.¶ 7). They assert that they performed much of that work after they had worked forty hours, but

that they did not receive overtime compensation at a rate of time and one-half. (Pls.Decls.¶ 7). Additionally, Noll, acting under the direction of Sergeant Bradley, located, obtained, and trained his second dog on his off-duty time. (Noll Decl. ¶¶ 9, 33).

The Police Benevolence Association and defendants negotiated and placed into the collective bargaining agreement a yearly stipend to compensate plaintiffs for the additional work they performed as K–9 handlers. (Alpert dep. 58:22 to 59:2). The stipend was $1050 in 1991, $1100 in 1992, and $1150 from 1993 through 1996. (Pls.Decl.¶ 6). Those dollar amounts were not derived from any actual time plaintiffs spent. (Terhune dep. 205:22 to 206:3; Alpert dep. 58:17–21). Bergen County added the stipend to plaintiffs' base salaries so that it would be included in the calculation of their hourly rates. (Pls.Decls.¶ 6).

Plaintiffs' supervisors, Sergeant Gailes, Captain Benedetto, Sheriff Terhune, Undersheriff Bolton, Undersheriff Alpert, and Captain Duffy, were aware that plaintiffs were spending time above and beyond their scheduled forty hours in order to attend to their dogs. (Gailes dep. 47–50; Pl.Ex. B; Benedetto dep. 128:4–7; Terhune dep. 204:21–24; Bolton dep. 257:5–11; Alpert dep. 52:2–6; Duffy dep. 116:2–5). In fact, Captain Benedetto admitted at his deposition that he had conversations with numerous K–9 officers about being compensated on an hourly basis for their overtime work instead of receiving the stipend. (Benedetto dep. 152:14 to 154:11). In 1992 to early 1993, plaintiffs recorded the overtime they spent in the kennels in a logbook. (Gailes dep. 57:25 to 58:18; Duffy dep. 102:13–15; 106:4–10). Captain Duffy ordered Sergeant Gailes to instruct plaintiffs to stop making entries in the logbook because plaintiffs were filling out daily activity sheets, which made the logbook redundant. (Duffy dep. 102:25 to 103:16).

In early 1993, Sergeant Gailes, who was the supervisor for the Correction Division K–9 handlers, approved overtime compensation for Albanese, Byrnes, and Turre for the time they spent in the kennels beyond their scheduled hours. (Albanese Decl. ¶ 45; Byrnes

Decl. ¶ 43; Turre Decl. ¶ 38). Captain Benedetto ordered Gailes to stop paying overtime compensation when he learned that Gailes had instituted the policy without proper authority. (Benedetto dep. 165:16–25). During their conversation, Gailes told Benedetto that the "Garcia" decision[4] permitted public employees to be compensated for any work they performed for their jobs. (Gailes dep. 34:9 to 35:7).

In May 1993, Sheriff Terhune met with many of the K–9 handlers, including every plaintiff except for Davis, to discuss the goals of the unit and the amount of overtime the handlers spent caring for and maintaining their dogs. The handlers requested that they be paid overtime for their off the clock work, which amounted to two hours a day. After Terhune denied their request, the handlers informed him of the "Garcia" decision as well as the lawsuits against the Port Authority and Atlantic City in which K–9 handlers received overtime compensation. Terhune stated that those cases did not apply to their department, and asked that a memorandum be submitted detailing the off the clock work performed by the handlers. On May 25, 1993, Sergeant Gailes submitted a report to Terhune explaining that feeding, grooming, cleaning, exercising, and training the dog took two hours a day. (Albanese Decl. ¶ 46; Byrnes Decl. ¶ 44; Garner Decl. ¶ 40; Noll Decl. ¶ 36; Turre Decl. ¶ 39; Pl. Ex. B; Gailes dep. 38:7 to 41:9; Terhune dep. 196:1 to 198:18). Gailes sent copies of the report to Benedetto, Duffy, and Lieutenants Hessian and Douglas, but he never received a response. (Gailes dep. 41:10–19; 63:23 to 64:6).

Although he had no idea how long it took plaintiffs to care for and maintain their dogs and had never been a K–9 handler, Sheriff Terhune testified at his deposition that walking, feeding, grooming, and cleaning up after the dog should take five to ten minutes. (Terhune dep. 222:2–18; 218:10–11). He also stated that plaintiffs' and Sergeant Gailes's claim that those activities took two hours per day was preposterous. (Terhune dep. 215:16–25). In fact, he opined that caring for

and maintaining the dogs should not take any time because plaintiffs could leave the dogs at the kennel where the on-duty officer took care of the dogs and an inmate cleaned the kennel. (Terhune dep. 219:21 to 220:3).

After receiving a copy of the report, Captain Benedetto spoke with Captain Duffy to discuss Gailes's comments and concerns. (Benedetto dep. 158:6–8; 159:23 to 160:2). Benedetto was aware that some officers were performing K–9 related activities off duty, and following his conversation with Duffy, he instructed division commanders that plaintiffs should be given the time to … meet those [K–9 related] needs during working hours, whenever it was possible. (Benedetto dep. 161:3–7). When plaintiffs could not perform those needs while on duty, they "had to do it on their own time." (Benedetto dep. 161:8–11). Benedetto testified that the stipend was used to compensate plaintiffs for performing activities while off duty. (Benedetto 161:12–16).

Undersheriff Bolton reads the monthly updates to the service that reports on decisions relating to the Fair Labor Standards Act. (Bolton dep. 281:11 to 282:3; 283:4–6). She remembers reading the decision where K–9 handlers in Atlantic City were awarded overtime compensation. (Bolton dep. 285:2 to 286:11). She and Sheriff Terhune discussed the case and decided that it did not apply to their K–9 handlers because they had the option of housing their dogs at the kennel. (Bolton dep. 286:21–25; 288:5–20).

Plaintiffs also claim that they should receive overtime compensation for the time they spend maintaining their guns and cleaning and maintaining their uniforms, leather gear, and brass. (Albanese Decl. ¶¶ 39–42; Byrnes Decl. ¶¶ 37–40; Garner Decl. ¶¶ 35–39; Noll Decl. ¶ 35). Defendants required plaintiffs to keep their uniforms and leather gear clean and to maintain their firearms in operating condition. (Benedetto dep. 183:12–15 to 185:3; 185:15 to 186:19; Alpert dep. 51:9–15). Plaintiffs spent a variety of time performing these activities:

---

**4.** "Garcia" refers to *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which applied the FLSA to state and local governments.

—washing uniforms: 60 minutes per week (Albanese), 65 minutes every two weeks (but Byrnes did other things while the machines were running), 105 minutes per week (Davis), 90 minutes per week (but Garner performed other activities while the machines were running), 30 minutes per week (Noll);

—cleaning brass and leather: 10 to 20 minutes per week (Albanese), 15 to 20 minutes per month (Byrnes), 30 minutes per week (Davis); 30 minutes per day (Noll);

—maintaining firearms: 10 to 20 minutes per month (Albanese), 30 minutes per month (Garnes). (Albanese Decl. ¶¶ 40–42; Byrnes Decl. ¶¶ 39–40; Davis Decl. ¶ 31; Garner Decl. ¶¶ 36–39; Noll Decl. ¶ 35). All of this time occurred off the clock.

In addition to being a K–9 handler, Byrnes was a Drug Abuse Resistance Education ("DARE") officer, which involved making presentations to school children about drug prevention. During his time as a DARE officer, Byrnes spent one hour per week during off the clock time preparing for and scheduling his presentations. Byrnes received a stipend of approximately $600 for his work as a DARE officer rather than time and one-half his regular rate of pay. (Byrnes Decl. ¶ 41; Kaufman Decl. Ex. B). Byrnes was unable to testify how much time he spent per year on his DARE activities. (Kaufman Decl. Ex. B.). Sheriff Terhune and Captain Benedetto were aware that DARE officers spent off the clock time on their presentations, and they stated that the stipend was used to compensate them for their time. (Terhune dep. 207:13 to 208:3; Benedetto dep. 144:22 to 147:5). Benedetto testified that DARE officers knew that they would have to spend their own time on their presentations. (Benedetto dep. 145:10–20).

On May 13, 1996, plaintiffs filed a complaint in this Court seeking unpaid overtime compensation and other relief under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and a declaratory judgment that defendants willfully and recklessly violated the FLSA. Plaintiffs now move the Court to enter an order of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Their motion is limited to the issue of liability under the FLSA. Thus, they seek an order stating the following: (1) the time plaintiffs spent performing various activities during off the clock time counts as hours worked under the FLSA, and that time should be compensated as overtime to the extent the time exceeded forty hours per week; (2) plaintiffs worked overtime hours and were not compensated for them; (3) the rate of pay for overtime is one and one-half plaintiffs' regular hourly rate; (4) plaintiffs should be compensated for the actual hours they spent on their activities, and defendants' expert should not be allowed to testify on the amount of hours plaintiffs should or could have spent on their activities; (5) the statute of limitations is three years; and (6) plaintiffs are entitled to liquidated damages as provided by the FLSA. Defendants cross-move to exclude plaintiff's expert report and to dismiss Byrnes's claim for compensation for his work as a DARE officer because those activities were not alleged in plaintiffs' complaint.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. See Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. dismissed, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); United States v. 225 Cartons, 871 F.2d 409, 419 (3d Cir.1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S.

at 249, 106 S.Ct. at 2510–11. Summary judgment must be granted if no reasonable trier of fact could find for the nonmoving party. *See id.*

When the non-moving party bears the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

Further, when a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

█ In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991); *Schoch v. First Fidelity Bancorp.,* 912 F.2d 654, 657 (3d Cir.1990) ("unsupported allegations in [a nonmovant's] memorandum and pleadings are insufficient to repel summary judgment"); *see* Fed.R.Civ.P. 56(e). The summary judgment procedure enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process of litigation continues." *Id.* at 3188–89. The "unsupported statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are unsupported allegations in the pleadings." *Schoch,* 912 F.2d at 657.

█ An affidavit filed in opposition to a properly-supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A non-movant "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). The Court is not to presume the existence of specific facts from general averments. *See id.* Such an affidavit must: (1) "show affirmatively that the affiant is competent to testify to the matters stated therein;" (2) be based on "personal knowledge;" and (3) establish facts that "would be admissible at trial." Fed.R .Civ.P. 56(e); *see Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 282 (3d Cir.1988). In sum, an affidavit offered in opposition to a motion for summary judgment must establish a proper evidentiary foundation for the facts stated within it. *See Williams v. Borough of West Chester,* 891 F.2d 458, 471 (3d Cir.1989) (Garth, J., concurring). Affidavits that fail to satisfy these requirements "may not be considered" on a motion for summary judgment. *See Hlinka,* 863 F.2d at 282–83. Moreover, "[w]hen, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991).

## II. Guidelines for Interpreting the FLSA

█ The Supreme Court has consistently stated that the FLSA should be applied liberally in favor of employees: "[W]ithin the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211, 79

S.Ct. 260, 264, 3 L.Ed.2d 243 (1959). In interpreting the FLSA, this Court will look not only to prior cases, but also to the Secretary of Labor's and the Administrator's of the Wage and Hours Division's rulings, opinions, and interpretations. Although those rulings, interpretations, and opinions do not bind the courts, they do "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Mabee v. White Plains Publ'g Co.*, 327 U.S. 178, 182, 66 S.Ct. 511, 513, 90 L.Ed. 607 (1946) (quotation omitted); *see also Dunlop v. New Jersey*, 522 F.2d 504, 509 (3d Cir.1975) ("While these administrative rulings do not have the binding effect of law, we may not only properly resort to them for guidance but should also accord them the weight, persuasiveness, and respect to which the expertise of their formulators entitles them."), *judgment vacated*, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976).

### III. Are Plaintiffs' Activities Compensable Under the FLSA?

#### a. Statutory Law, Case Law, and Administrative Rulings

In 1938, Congress passed the FLSA "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [FLSA]." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944). The FLSA covers employees who are "engaged in commerce or in the production of goods of commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." *See, e.g.*, 29 U.S.C. § 206. The FLSA mandates that employers not employ any of their employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 207(k) of the FLSA partially exempts law enforcement personnel from § 207(a). For law enforcement personnel to receive overtime compensation, they must work 171 hours in 28 days (or 42 and 3/4 hours per week) as opposed to 160 hours in 28 days (or 40 hours per week) for regularly covered employees. *See* 29 C.F.R. § 553.230; *Nichols v. City of Chicago*, 789 F.Supp. 1438, 1440–41 (N.D.Ill.1992).

Under the FLSA, the term " '[e]mploy' includes to suffer or to permit to work." 29 U.S.C. § 203(g). In the absence of a legislative definition, the Supreme Court interpreted work "as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal*, 321 U.S. at 597, 64 S.Ct. at 703. The Supreme Court's interpretation of work led to the decision in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), which held that the FLSA requires employers to compensate employees for the time spent walking from the time clock to their workbenches and for the time spent putting on work clothes. *Id.* at 692–93, 66 S.Ct. at 1194–95.

In 1947, Congress enacted the Portal–to–Portal Act ("Portal Act"), 29 U.S.C. § 251, *et seq.*, which amended the FLSA, because it found that judicial interpretations of the FLSA had created "wholly unexpected liabilities," which if

> permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of others ... [and] (4) employees would receive windfall payments ... for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay.

29 U.S.C. § 251. Thus, Congress passed the Portal Act to limit the effects of *Anderson* and to attempt "to delineate certain activities which did not constitute work, and therefore did not require compensation." *Reich v. New York City Transit Auth.*, 45 F.3d 646, 649 (1995).

To reign in the activities covered by the FLSA, Congress changed the focus from work to principal activities and preliminary and postliminary activities:

[N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938 ... on account of the failure of such employer to pay ... an employee overtime compensation, for or on account of the following activities ...

(1) walking, riding, or traveling to and from the actual place of performance of the *principal activity or activities* which such employee is employed to perform, and

(2) activities which are *preliminary to or postliminary* to said principal activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (emphasis added).[5] In interpreting the phrases principal activities and preliminary and postliminary activities for the first time in *Steiner v. Mitchell,* 350 U.S. 247, 253, 76 S.Ct. 330, 334, 100 L.Ed. 267 (1956), the Supreme Court found that the Portal Act did not ban compensation for all activities performed prior to or after work. *Id.* at 255–56, 76 S.Ct. at 335–36. The Court stated "that activities performed either before or after the regular work shift, on or off the production line, are compensable ... if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded." *Id.* at 256, 76 S.Ct. at 335 (holding that workers who were required to shower and remove their clothes following their shifts were entitled to compensation for time spent performing those activities).

Although the *Steiner* Court's definition clarifies the Portal Act's limitation on the FLSA's definition of employ, the cases decided after *Steiner* have applied the *Steiner* definition inconsistently. *Compare Mitchell v. King Packing Co.,* 350 U.S. 260, 263, 76 S.Ct. 337, 339, 100 L.Ed. 282 (1956) (ruling that butchers for meat packing company should be compensated for time spent sharpening knives prior to and after work and during lunch hours because that activity was indispensable and integral to their principle activities), *and Barrentine v. Arkansas–Best Freight Syst., Inc.,* 750 F.2d 47, 50–51 (8th

Cir.1984) (finding that truck drivers were entitled to compensation for time spent driving company trucks for repairs prior to departing on freight haulage route), *cert denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985), *with Vega v. Gasper,* 36 F.3d 417, 424–427 (5th Cir.1994) (ruling that agricultural workers were not entitled to compensation for lengthy travel on company bus because employees were not required to use company bus; remanding to district court to determine whether time waiting during morning transportation and in afternoon to be paid was for employer's benefit), *and Leone v. Mobil Oil Corp.,* 523 F.2d 1153, 1163–64 (D.C.Cir.1975) (finding that employee representatives could not recover under FLSA for time spent accompanying federal safety inspectors on inspection of employer's plant because activity was not primarily for employer's benefit and because employer did not choose employees who would accompany inspectors).

The Second Circuit has determined that generalizations, not clear standards, emerge from such cases. *See Reich,* 45 F.3d at 650. The Second Circuit explained:

> The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable. Commuting and similar activities are generally not compensable. The ability of the employer to maintain records of such time expended is a factor. And, where the compensable preliminary work is truly minimal, it is the policy of the law to disregard it.

*Id.* The Fifth Circuit has defined preliminary and postliminary activities as those "undertaken for (the employees) own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir.1976) (quotation omitted). With these principles in

---

**5.** This provision contains exceptions that do not apply to this case.

mind, the Court will now turn to the issues presented by this case.

### b. K–9 Activities

The question whether dog handlers should be compensated for caring for and maintaining their dogs off the clock is one of first impression in the Third Circuit. The courts that have addressed the issue have generally found that such time is compensable under the FLSA. *See Hellmers v. Town of Vestal,* 969 F.Supp. 837, 842 (N.D.N.Y.1997) ("[T]ime spent grooming, bathing, exercising, cleaning, and training the police dog is 'required by the employer and is pursued necessarily and primarily for the benefit of' the employer, and is thus 'work' under the FLSA."); *Karr v. City of Beaumont,* 950 F.Supp. 1317, 1322–23 (E.D.Tex.1997) (finding that caring for and transporting dogs and related maintenance of police vehicles is compensable because those activities are integral and indispensable to police work, necessary for K–9 Division's business, and are performed for benefit of police department); *Holzapfel v. Town of Newburgh,* 950 F.Supp. 1267, 1273 (S.D.N.Y.1997) (ruling that basic level of care and attention is part of dog handler's work); *Andrews v. DuBois,* 888 F.Supp. 213, 216 (D.Mass.1995) ("Feeding, grooming, and walking the dogs are therefore indispensable (albeit incidental) parts of maintaining the dogs as law enforcement tools; they are activities that are closely related to the work duties of a canine officer."); *Levering v. District of Columbia,* 869 F.Supp. 24, 26–27 (D.D.C.1994) (finding that feeding, exercising, and caring for dogs are integral and indispensable parts of dog handlers' work activities); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 277–79 (E.D.Va. 1992) (determining that home dog care activities are compensable under FLSA); *see also Reich v. New York City Transit Auth.,* 45 F.3d 646, 651 (1995) (stating that "walking, feeding, training, grooming, and cleaning up are integral and indispensable parts of the handler's principal activities and are compensable as work").

■ This Court is in accord with the reasoning and rulings of the cases finding that the FLSA requires employers to compensate dog handlers for the off the clock time they spend caring for and maintaining their dogs. Plaintiffs' dogs are more than a man's best friend; they are essential pieces of equipment that assist the officers in the efficient enforcement of the laws. Plaintiffs claim that they should be compensated for the following off the clock activities: grooming, cleaning, exercising, cleaning the dog's living areas, cleaning the vehicles used to transport the dogs, feeding and watering, and training. The time plaintiffs spend performing those activities is critical to the performance of their duties and to the preservation of the Sheriff Department's equipment. Although cleaning the vehicles and living areas bears an incidental connection to plaintiffs' principal activities, i.e., enforcing the laws, those activities are related to caring for a dog, and plaintiffs would not "suffer" such work if they were not K–9 officers. Thus, the Court finds that plaintiffs' off the clock time caring for and maintaining the dogs is integral and indispensable to their principal activities and were performed for defendants' benefit.

Defendants concede that grooming, cleaning, exercising, feeding, and training the dogs are compensable under the FLSA, but that plaintiffs have exaggerated the amount of time they spent performing those activities. (Defs. Br. at 5). They also assert that questions exist as to which activities plaintiffs actually performed. Although defendants' arguments do not address plaintiffs' motion for summary judgment on the issue of off the clock time, they do summarize the jury's task—to decide what activities plaintiffs performed and how much time they spent on those activities. *See* discussion *infra* at Part V. Thus, the Court will grant plaintiffs' motion for summary judgment on the issue that defendants must compensate them for off the clock work related to caring for and maintaining their dogs.

### c. Non–K–9 Activities

■ Plaintiffs also claim that they should be compensated for the time they spent off the clock maintaining their uniforms and guns—removing and polishing brass, washing uniforms, polishing shoes and other leather gear, and maintaining guns. Defendants require plaintiffs to perform these ac-

tivities presumably because they enhance *esprit de corps* and ensure that the Sheriff's Department presents a polished image to the public. Thus, these activities will be compensable under the FLSA if the jury finds that they were performed for defendants' benefit and are not de minimis. *See* discussion *infra* Part II. D. Other district courts have also concluded that such activities are compensable. *See Hellmers v. Town of Vestal,* 969 F.Supp. 837, 843–44 (N.D.N.Y.1997); *Treece v. Little Rock,* 923 F.Supp. 1122, 1127 (E.D.Ark.1996); *see also* Wage–Hour Adm'r Op. Letter # 1326 (June 7, 1974) (stating that Department of Labor considers washing uniform to be time worked).

■ Byrnes also requests compensation for the clock time he spent as a DARE officer. DARE officers make presentations to school children about the dangers associated with drug use. Those presentations serve the Sheriff's Department's goals of reducing and fighting the use and abuse of drugs. Defendants concede that Byrnes's work as a DARE officer served to benefit the Sheriff's Department. (*See* Benedetto dep. 145:17–18). Thus, as with the other activities, the FLSA mandates that defendants compensate Byrnes for the off the clock time he spent administering and preparing for his presentations.

■ Defendants move to have the DARE claim dismissed because it was not included in plaintiffs' complaint. Rule 8 of the Federal Rules of Civil Procedure provides: "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...." Paragraph 11 of plaintiffs' complaint contains the essential statement of their claim for relief. That paragraph alleges that plaintiffs "performed work for which they have not been compensated as required by the [FLSA].... These excess hours include compensable time spent actually at work sites as well as time spent caring for and maintaining police dog(s) and related law enforcement equipment." Byrnes's argument that the complaint placed defendants on notice of the DARE claim fails because the complaint focused on two types of work and would not lead a reasonable defendant to

believe that plaintiff was suing for another type of work. Therefore, the complaint fails to meet the liberal pleading standard with regards to the DARE claim.

■ However, Byrnes has consistently and actively litigated the DARE claim. In response to an interrogatory asking him to state all his claims for overtime, Byrnes included a section describing his DARE activities. (*See* Kaufman Decl. Ex. A). In his deposition, Byrnes testified that in addition to the claim for time spent on K–9 activities, he was also pursuing a claim for the time he spent off the clock as a DARE officer. (*See* Kaufman Decl. Ex. B). Byrnes proceeded to answer defendants' counsel's questions related to his position as a DARE officer. (*See* Kaufman Decl. Ex. B).

Byrnes claims that he should be allowed to amend his complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, which permits parties to amend their pleadings to include issues that are not raised in the pleadings, but are tried by express or implied consent of the parties. *See In re Meyertech Corp.,* 831 F.2d 410, 422–23 (3d Cir.1987). Rule 15(b), however, is limited to situations where the issue has been *tried.* Here, no trial has occurred, and therefore, Byrnes can find no solace in Rule 15(b).

Rule 15(a) does, however, provide Byrnes with relief. Rule 15(a) provides that after twenty days of filing a pleading, a party may amend the pleading only with written consent of the other party or by leave of court, and that "leave should be freely given when justice so requires." In this instance, Byrnes moves pursuant to Rule 15(b) to conform the pleadings to the evidence so that the DARE claim is before the Court. In the interests of justice, the Court will transform Byrnes's motion as one under Rule 15(a) rather than Rule 15(b) because defendants had notice of and were defending against Byrnes's DARE claim. Thus, the Court will deny defendants' motion to dismiss, and will grant Byrnes's motion to conform the pleadings.

### d. The De Minimis Doctrine

■ To recover damages for uncompensated hours, employees must show that the

amount of hours they worked was not de minimis. *See, e.g., Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1194–95, 90 L.Ed. 1515 (1946). The Second and Ninth Circuits have employed a three-part analysis to determine whether otherwise compensable time is de minimis: (1) the administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the work was performed on a regular basis. *See Reich v. New York City Transit Auth.,* 45 F.3d 646, 652 (1995); *Lindow v. United States,* 738 F.2d 1057, 1062–63 (9th Cir.1984). Therefore, at trial, plaintiffs will have to demonstrate that the amount of time they spent on their off the clock activities was not de minimis. The Court notes that the de minimis doctrine will be a critical inquiry for the jury when it considers the time plaintiffs spent cleaning and maintaining their uniforms and guns.

## IV. The Rate of Pay for Overtime

### a. Time and One–Half

■ Section 207(a) of the FLSA provides that employers must pay employees for overtime at a rate of time and one-half the employees' regular rate. "If the employee is employed solely on a weekly basis, his regularly hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113.

In her letter ruling dated June 13, 1989, the Administrator found that the time dog handlers spent taking care of their dogs at home was compensable as hours worked under the FLSA. *Fair Labor Standards Handbook* 137–38 (Feb.1996) (reprinting opinion letter of June 13, 1989). The Administrator then wrote, "there is no requirement that the hourly rate of pay for the time spent in caring for the dog be the same as that for law enforcement duties." *Id.* at 138. On August 11, 1993, the Administrator addressed the rate of pay for canine activities:

> [D]og care activities ... do not have to be compensated at the same rate of pay as paid for law enforcement activities. If different pay rates are used, the employer

may, *pursuant to an agreement or understanding* arrived at with the employee before performance of the work, pay for [such] overtime hours ... at time and one-half the special rate pursuant to § 7(g)(2) of the FLSA.

*Id.* at 196 (emphasis added) (reprinting opinion letter of August 11, 1993).

Defendants rely on these letter rulings to conclude that the Court should not employ plaintiffs' regular hourly rate in determining the rate of pay for plaintiffs' overtime hours. Plaintiffs counter that the second ruling states that a different rate of compensation may be employed *only* when the employees and the employer have an agreement that the employees will be paid at a different rate of compensation. Plaintiffs add that the rulings do not state, suggest, or imply that a Court can impose a different rate of compensation in the absence of an agreement.

The Court finds plaintiffs' arguments to be more persuasive. The Administrator's letter rulings state that employers need not pay dog handlers the same rate of compensation for canine activities as they receive for law enforcement duties. The second letter ruling states that the overtime compensation may be calculated from the special rate *if* the employer and employee have an understanding or agreement. In this instance, plaintiffs and defendants had no agreement or understanding concerning the hours plaintiff spent off the clock caring for and maintaining their dogs. Moreover, nothing in these letter rulings suggests that a Court may impose a rate of compensation for overtime hours that differs from one and one-half plaintiffs' regular hourly rate. Thus, plaintiffs must be paid time and a half for the hours they worked in excess of a forty-hour week.

### b. The Stipend

The FLSA permits employers to pay employees premium rates, which do not factor into the calculation of the regular rate, in lieu of overtime compensation for certain enumerated activities, none of which apply here. 29 U.S.C. § 207(e)(5), (6), and (7). "The plain wording of the statute makes it clear that extra compensation provided by premi-

um rates other than those described cannot be treated as overtime premiums." 29 C.F.R. § 778.207. When an employer pays an employee a premium rate not included in § 207(e)(5), (6) or (7), the payments "must be included in the employee's regular rate before statutory overtime compensation is computed." *Id.* Moreover, no part of those payments may be credited towards overtime compensation. *Id.*

Although the Court normally grants the Department of Labor's regulations great deference, the circumstances and facts of this case dictate that the Court follow a different path and not afford the usual deference. As the Supreme Court stated in *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984): "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. The Court finds that the Department of Labor's regulation as applied in this case would lead to an unjust result, and is therefore an impermissible construction of the statute.

 In this case, the Police Benevolence Association and defendants negotiated and ultimately included stipends for K–9 and DARE activities in their collective bargaining agreements. The fact that the parties freely entered into those agreements is significant and should not be ignored. To include those stipends as part of plaintiffs' regular rate before overtime compensation is computed would permit plaintiffs to recover a windfall; i.e., receive the stipend for extra work related to K–9 and DARE activities while also using that money to determine their regular hourly rate. Moreover, as discussed *infra*, plaintiffs will receive double compensation through the FLSA's provision for liquidated damages. *See* discussion *infra* Part VII. The Court also concludes that the stipends should serve as a credit against any award of overtime compensation for the years under consideration. Thus, the Court has chosen to relax the Department of Labor's regulation

because the result the Court reaches better serves the spirit and purpose of the FLSA.

## V. Damages and Experts

### a. Do plaintiffs' hours have to be reasonable?

The ultimate task for the jury in this case will be to assess damages against defendants. Although that task may not appear to be too arduous or complex, looks can be deceiving. Plaintiffs argue that they should be compensated for all hours actually worked whereas defendants assert that plaintiffs should be compensated only for the hours needed for reasonable care.

 In general, employees are to be compensated for the actual hours they worked. *See, e.g., Skipper v. Superior Dairies*, 512 F.2d 409, 419 (5th Cir.1975); 29 C.F.R. § 778.223. To receive compensation for actual hours worked, the employee must prove that he performed work for which he was not compensated. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 1191–92, 90 L.Ed. 1515 (1946).[6] The employee does not face an impossible burden, especially in light of 29 U.S.C. § 211(c), which mandates that employers keep records of the employees' wages and hours. *Id.* at 687, 66 S.Ct. at 1192. In situations where no records exist, "an employee [ ] carrie[s] out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that as matter of just and reasonable inference." *Id.* The burden then shifts to the employer to produce evidence of the actual hours worked or "to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88, 66 S.Ct. at 1192.

Four courts have found that employees must show that the overtime hours they worked must be reasonable in order for those hours to be compensable. *See Hellmers v. Town of Vestal*, 969 F.Supp. 837, 844–45 (N.D.N.Y.1997); *Holzapfel v. Town of*

---

**6.** Although the Court's decision in *Anderson* was superseded by statute, the Supreme Court's discussion on what the employee and employer

must prove in a claim for overtime compensation is still valid.

*Newburgh,* 950 F.Supp. 1267, 1273 (S.D.N.Y. 1997); *Reich v. IBP, Inc.,* 820 F.Supp. 1315, 1324 (D.Kan.1993), *aff'd and remanded,* 38 F.3d 1123, 1127 (10th Cir.1994); *Amos v. United States,* 13 Cl.Ct. 442, 449 (Cl.Ct.1987). In *Holzapfel* and *Hellmers,* the courts faced situations similar to the one this Court confronts. In *Holzapfel,* the court concluded that "if a K–9 officer's specific exertions, even though of a type that would generally be compensable, exceed reasonable limits, they cannot be considered integral and necessary and therefore do not constitute work." 950 F.Supp. at 1273; *see also Hellmers,* 969 F.Supp. at 844–45 (same). The court in *Hellmers* reasoned: "[I]t makes intuitive sense to this Court that in order for an activity to be an integral and indispensable part of the principal activities for which covered workmen are employed, the amount of overtime an employee claims to have spent must be reasonable in relation to the principal activity." 969 F.Supp. at 844.

█ Defendants have consistently questioned the reasonableness of the amount of hours plaintiffs claim to have worked. This Court finds that plaintiffs must demonstrate that the amount of overtime hours they worked were reasonably related to their principal activity. In situations where the claim for overtime compensation involves off the clock time, the reasonableness requirement ensures that plaintiffs are actually serving their employers' benefit rather than padding their hours or shirking their responsibilities. Moreover, if the Court does not adopt the reasonableness standard, it will have to adopt plaintiffs' guess of how many hours they worked because they do not know the exact number of hours that they worked. Thus, although the Court recognizes that plaintiffs have worked overtime hours for which they have not received compensation, they will not receive compensation for hours that are unreasonable.

#### b. Expert Testimony

█ Rule 702 of the Federal Rules of Evidence permits expert testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Defendants proffer an expert who is an experienced dog trainer and has particular knowledge of the dogs' breeds in this case. They claim that she will opine on how long it should take to care for the dogs in issue. Plaintiffs proffer an expert to testify on the activities that a dog handler needs to perform and why they need to be performed.

Defendants and plaintiffs both move to dismiss the other parties' expert. Plaintiffs argue that defendants' expert has no specialized knowledge about police dogs, and that her opinion is not based on plaintiffs' and their dogs' individual circumstances. Defendants, on the other hand, argue that plaintiffs' expert's report contains generalizations about dog handlers rather than specific information about plaintiffs' situations. Both parties assert that the other side's expert should be excluded pursuant to Rule 403 of the Federal Rules of Evidence, which permits courts to exclude evidence when the probative value is substantially outweighed by, *inter alia,* the danger of unfair prejudice, confusion of the issues, or misleading of the jury.

Plaintiffs and defendants dispute the reasonableness of the amount of overtime hours plaintiffs claim to have worked. Thus, the reasonableness of plaintiffs' overtime hours is an issue of fact for the jury. Caring for and maintaining a dog, especially a police dog, is not within the common knowledge of a lay person. In addition, defendants' expert serves to negative the reasonableness of the inference to be drawn from plaintiffs' testimony and their expert's testimony. Thus, the Court finds that both plaintiffs' and defendants' experts' testimony will be admissible because it will assist the trier of fact in assessing damages.

### VI. Statute of Limitations

█ A claim for unpaid overtime compensation must ordinarily be filed "within two years after the cause of action accrued." 29 U.S.C. § 255(a). "[A] cause of action 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21 (citations omitted). However, "when a cause

of action arises out of a willful violation," the plaintiff may file his action "within three years after the cause of action accrued." *Id.* A willful violation occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). The Third Circuit has found a willful violation when an employer was "evidently indifferent" to the FLSA's requirements. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir.1991).

Plaintiffs assert that the Court should impose a three-year statute of limitations because defendants recklessly disregarded the fact that plaintiffs were working uncompensated overtime hours. Plaintiffs contend that the following facts exhibit defendants' . reckless disregard: they were cognizant that plaintiffs were working overtime hours, they failed to consult an attorney to determine whether their distinction between this case and the Atlantic City case was true or legally sufficient, and Sheriff Terhune categorically dismissed the significance of the "Garcia" decision. Defendants counter that they made a good faith effort to compensate plaintiffs with the stipend.

■ The FLSA imposes significant burdens on an employer to ensure that its treatment of, behavior towards, and policies regarding its employees complies with the FLSA. When an employer is informed that it may be violating the FLSA, it must investigate its potential violation and should consult an attorney for legal advice. Defendants failed to fulfill its obligations in this case. Initially, the stipend may have been a good faith effort to pay plaintiffs for the additional work they had to perform, but after defendants learned about the "Garcia" decision and the Atlantic City and Port Authority cases, they had a duty to conduct a more extensive inquiry than they did. Defendants' effort of meeting with plaintiffs and asking for a memorandum does not comport with the FLSA's extensive duties for employers. Moreover, defendants have not submitted any evidence to refute plaintiffs' submissions, which have sufficiently demonstrated that the statute of limitations should be three years. Thus, the Court finds that the statute of limitations will be three years from the time defendants learned of the "Garcia" decision and the Atlantic City and Port Authority cases.

## VII. Liquidated Damages

■ Section 216(b) of the FLSA provides the remedy for when an employer fails to pay for overtime: "Any employer who violates the provision of section 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages." However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of [the FLSA].

29 U.S.C. § 260. An employer bears a "plain and substantial" burden of proof that it should not have to pay liquidated damages. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir.1991) (quoting *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984)), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617.

The Third Circuit has thoroughly explained § 260 of the Portal Act:

> The good faith requirement is a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the Act. The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. Ignorance alone will not exonerate the employer under the objective reasonableness test.

> If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.

*Id.* at 907–08 (internal citations and quotations omitted). "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the [FLSA's] requirements, but nonetheless, violated its provisions." *Id.* at 908.

■ In their brief, defendants contend that the Court should not impose liquidated damages because the stipend plaintiffs received compensated them for their off the clock work. Defendants argue that the fact that the stipend arose out of the collective bargaining process demonstrates their good faith efforts. Those arguments fail because defendants have failed to present any evidence that they attempted to ascertain the requirements of the FLSA. Moreover, defendants have failed to present the Court with plain and substantial evidence that it acted reasonably and in good faith. Thus, the Court has no discretion and must impose liquidated damages on defendants if plaintiffs receive a favorable verdict from the jury.

## CONCLUSION

In summary, the Court has made the following rulings:

(1) granting plaintiffs' motion that they should be compensated for the overtime they spent off the clock caring for and maintaining their dogs;

(2) granting plaintiffs' motion that they should be compensated for the overtime they spent off the clock for their non–K–9 activities to the extent the activities were performed for defendants' benefit and said time is found not to be de minimus;

(3) granting Byrnes's motion to conform the pleadings to contain his DARE claim;

(4) denying defendants' motion to dismiss Byrnes's DARE claim for failing to include it in the complaint;

(5) granting plaintiffs' motion that the rate of compensation for overtime is one and one-half times plaintiffs' regular hourly rate;

(6) granting plaintiffs' motion that they be compensated for the actual time they spent, provided plaintiffs show that such time was reasonable;

(7) denying plaintiffs' motion to exclude defendants' expert's testimony;

(8) denying defendants' motion to exclude plaintiffs' expert's testimony;

(9) the statute of limitations is three years from the time defendants learned of the "Garcia" decision and the Atlantic City and Port Authority cases;

(10) granting plaintiffs' motion that they should receive liquidated damages if they receive a favorable verdict.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 31st day of December, 1997,

ORDERED that:

(1) plaintiffs' motion that they should be compensated for the overtime they spent off the clock caring for and maintaining their dogs is granted;

(2) plaintiffs' motion that they should be compensated for the overtime they spent off the clock for their non–K–9 activities is granted to the extent the activities were performed for defendants' benefit and said time is found not to be de minimus;

(3) plaintiff Byrnes's motion to conform the pleadings to contain his DARE claim is granted;

(4) defendants' motion to dismiss Byrnes's DARE claim for failing to include it in the complaint is denied;

(5) plaintiffs' motion that the rate of compensation for overtime is one and one-half times plaintiffs' regular hourly rate is granted;

(6) plaintiffs' motion that they be compensated for the actual time they spent is granted, provided plaintiffs show that such time was reasonable;

(7) plaintiffs' motion to exclude defendants' expert's testimony is denied;

(8) defendants' motion to exclude plaintiffs' expert's testimony is denied;

(9) the statute of limitations is three years from the time defendants learned of the "Garcia" decision and the Atlantic City and Port Authority cases; and

(10) plaintiffs' motion that they should receive liquidated damages if they receive a favorable verdict is granted.