**Robert HENCHY, Plaintiff,**

v.

**CITY OF ABSECON, and City of Absecon Police Department, Defendants.**

**No. CIV.A.00–1353 (JEI).**

United States District Court,
D. New Jersey.

June 11, 2001.

Law Offices of Stuart J. Alterman by Stuart J. Alterman, Kendall J. Collins, Cherry Hill, NJ, for Plaintiff.

Tuohy, Tuohy & Blee by Michael J. Blee, Atlantic City, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is Defendants City of Absecon and City of Absecon Police Department's Motion for Summary Judgment. For the reasons set forth below, the Motion is denied.

## I.

Plaintiff, City of Absecon Police Officer Robert Henchy, alleges that Defendants violated his rights under the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiff claims that Defendants failed to compensate him for the overtime work he

performed in caring for his police dog. Defendants move for summary judgement, arguing that: 1) the claim is barred by the statute of limitations; 2) the claim is precluded by the "fair and binding" agreement the parties entered; and 3) Defendants are entitled to the protections of the "Good Faith Immunity" provisions of the FLSA, 29 U.S.C. §§ 259, 260.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

### A. Statute of Limitations

Defendants argue that Plaintiff's claim is time-barred because it was not commenced within the applicable statute of limitations period. Plaintiff counters that the statute of limitations does not bar his claim and that, even if it otherwise would bar his claim, it should be equitably tolled based on Defendant's conduct.

Pursuant to 29 U.S.C.A. § 255(a), an action for unpaid overtime compensation under the FLSA must be "commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

■ "It is well settled that '[a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.'" *Mitchell v. Lancaster Milk Co.*, 185 F.Supp. 66, 70 (M.D.Pa.1960); *see also Balzano v. Township of North Bergen*, 649 F.Supp. 807, 810 (D.N.J.1986); *Angulo v. Levy Co.*, 568 F.Supp. 1209, 1215 (N.D.Il. 1983) (citations omitted); *Shandelman v. Schuman*, 92 F.Supp. 334, 335 (E.D.Pa. 1950). Thus, Plaintiff's claim "for overtime compensation accrued at each payday after the alleged overtime was worked." *Angulo*, 568 F.Supp. at 1215. Accordingly, Plaintiff's claims for overtime earned within the two years immediately prior to his filing the Complaint on March 12, 2000, are timely. *See id.; Shandelman*, 92 F.Supp. at 335.

Here, Plaintiff is seeking compensation for overtime earned between December 1996 and December 1999. (Def's Br. at 3 (citations omitted)). At minimum, Plaintiff's claim for overtime earned since March 12, 1998 may proceed. *See Angulo*, 568 F.Supp. at 1215 (citations omitted); *Shandelman*, 92 F.Supp. at 335. However, the question becomes whether Plaintiff's claim for overtime accrued from December 1996 through March 12, 1998 are barred by § 255. Plaintiff argues that all his claims are timely because either: 1)

Defendants' failure to pay overtime was a "continuing violation;" or 2) the statute of limitations was equitably tolled due to Defendants' conduct. (Pl.'s Opp. at 8, 10). While Plaintiff's first argument is without merit, his allegations as to equitable tolling are sufficient to avoid summary judgment on statute of limitations grounds for his claims arising before March 12, 1998.

### 1. Continuing Violation Theory

■ First, Plaintiff argues that his claims are timely under the continuing violation theory. The continuing violation theory is an exception to the general rule of when the statute of limitation begins to run in a discrimination action. As the Third Circuit has explained,

> In employment discrimination suits, the proper focus of the statute of limitations inquiry "is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (emphasis in original). However, if the alleged discriminatory conduct is a "continuing violation," the statute of limitations begins to run on the date of the last occurrence of discrimination rather than the first. *Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv.*, 667 F.2d 1074 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

*Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (1992).

While Plaintiff is correct that "most courts appear to treat pay discrimination claims as continuing violations," (Pl.'s Br. at 8), this is not a pay discrimination claim. This is a claim for overtime compensation. As explained previously, "under the FLSA, a cause of action accrues for overtime compensation at each regular payday immediately following the work week during

which the services were rendered." *Angulo*, 568 F.Supp. at 1215. Thus, repeated failure to properly compensate employees for overtime are not treated as continuing violations but as repeated violations. Accordingly, the continuing violation theory does not save Plaintiff's claim for overtime earned between December 1996 and March 12, 1998.

### 2. Equitable Tolling

Plaintiff next argues that his claims are timely because the statute of limitations should be equitably tolled based on Defendants' conduct. Specifically, Plaintiff argues that it should be tolled because of Chief Mulvihill's repeated assurances that "the overtime compensation provided for in the Agreement was proper" and because Defendants failed to post a poster appraising employees of their minimum wage and overtime pay rights as required by the United States Department of Labor. (Pl's Opp. at 10, 12).

■ Read into every federal statute of limitation, including the FLSA, *see Kamens v. Summit Stainless*, 586 F.Supp. 324, 328 (E.D.Pa.1984) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)), the equitable tolling doctrine applies in three principal situations in this circuit. *See Miller*, 977 F.2d at 845. First, "[if] the defendant has actively misled the plaintiff." *Id.* (citations omitted). Second, "if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights." *Id.* And third, "if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Id.*

■ The Third Circuit has explained that equitable tolling is appropriate " 'where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his

rights.'" *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 309 (3d Cir.1983) (quoting *Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir.1977)). Additionally, the circuit has instructed that an employer's actions need not be "egregious acts of active deception" in order to toll the limitations period. *Miller*, 977 F.2d at 845.

■ In *Miller*, the plaintiff alleged that defendant's senior vice president represented to her that her pay was on par with her colleague and that she was entitled to and would receive promotion. *Id.* While the court made no judgment as to the appropriateness of equitable tolling, the court held that issues of material fact made summary judgment on the issue inappropriate. Id. at 845 n. 7. According to the court, even if the plaintiffs claims "were not otherwise timely, these allegations in support of equitable tolling should have precluded summary judgment on statute of limitations grounds." *Id.* Here, Plaintiff alleges that Chief Mulvihill repeatedly assured him that the overtime compensation provided for in Agreement was proper. As in *Miller*, these allegations in support of equitable tolling are sufficient to defeat summary judgment on statute of limitations grounds. *See Miller*, 977 F.2d at 845 (citations omitted).

Additionally, the dispute as to whether Defendants posted a poster advising employees of their minimum wage and overtime pay rights precludes summary judgment. Federal regulations require all employers to display such posters, *see* 29 C.F.R. § 516.4, and "[a]n employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations." *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 328 (E.D.Pa.1984) (citing *Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir.1977)). Here, Plaintiff contends that Defendants failed to post the requisite notice. Ac-

cordingly, Plaintiff's has alleged sufficient grounds to invoke equitable tolling to avoid summary judgment on his FLSA claims for unpaid overtime arising between December 1996 and March 12, 1998. *See Kamens*, 586 F.Supp. at 328.

■ Finally, Defendants' argument that the statute of limitations cannot be tolled because Plaintiff was aware that he was not adequately compensated for his overtime work is unpersuasive. As the Third Circuit explained in *Meyer v. Riegel Prod. Corp.*, 720 F.2d 303, 308 (3d Cir.1983), a plaintiff's contemporaneous suspicion as to the legality of his employer's action does not in itself preclude the invocation of equitable tolling.

## B. Effect of the Agreement

Defendants next argue that, even if the statute of limitations does not bar Plaintiff's claims, the April 21, 1993, Agreement (hereinafter "Agreement") (Defs.' Br. Ex. I) between Plaintiff and the Police Department does. According to Defendants, the Agreement should be enforced as written. Plaintiff counters that the Agreement is voidable because it is contrary to the FLSA and public policy considerations.

■■ Generally, "courts should enforce contracts as made by the parties." *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 633 A.2d 531 (1993). However, the Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the [FLSA]." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). Accordingly, the Court has held that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legis-

lative policies it was designed to effectuate." *Id.* (citations omitted).

Nevertheless, although, pursuant to Section 207(a) of the FLSA, overtime pay shall be at a rate of time and one-half of the employee's regular rate, the Department of Labor has taken "the position that dog care activities ... do not have to be compensated at the same rate of pay as paid for law enforcement activities." (Defs.' Br. Ex. M–Dep't of Labor opinion letter of August 11, 1993). However, "[i]f different pay rates are used, the employer may, pursuant to an agreement or understanding arrived at with the employee before performance of the work, pay for overtime hours engaged in such work at time and one-half the special rate pursuant to 7(g)(2) of the FLSA." (*Id.*). Thus, in situations such as this, "overtime compensation may be calculated from the special rate *if* the employer and employee have an understanding or agreement." *Albanese*

*v. Bergen County*, 991 F.Supp. 410, 421 (D.N.J.1997) (Wolin, J.).

■■■ Here, there is a question as to whether the Agreement established a different rate of compensation. Pursuant to the Agreement, Plaintiff was to "receive a credit in his compensation time account of 10.5 hours each month" for the care and feeding of his K–9 dog.[1] (Defs.'Br.Ex.I). This credit was to continue for the duration of Plaintiff's involvement with the K–9 unit. (*Id.*).[2] Defendants argue that the 10.5 hour time credit required by the Agreement was arrived at using the then-current minimum wage rate.[3] (Defs.' Rep. at 9). Specifically, Defendants contend that they arrived at 10.5 hours of compensation time by multiplying the then-minimum wage by the amount of time Plaintiff dedicated to caring for his dog, dividing that total by Plaintiff's actual wage, and then multiplying that number by 1.5. (*Id.*).[4] Plaintiff, however, maintains that no alternative rate of pay was ever discussed.[5] (Pl.'s Opp. at 18). Thus, Plaintiff

---

[1] Defendants appear to argue that the Agreement is consistent with the collective bargaining agreements entered between the PBA and the City since 1992. Pursuant to these agreements, "compensatory time off may be given in lieu of overtime payments at the request of the employee and with the approval of the Chief of Police provided, however, that the compensatory time is requested prior to the pay period [in which] the overtime payments are to be made." (Defs.' Br. at 6).

[2] Interestingly, each month Plaintiff would submit compensatory time requests for 10.5 hours. That request was crossed out and changed to 7 hours which was then multiplied by 1.5 to arrive at 10.5 hours of compensatory time each month as "was the understanding of [Chief Mulvihill] of the compensation that [P]laintiff was entitled to receive." (Defs. Br. at 8). However, from February 1998, until the K–9 unit was disbanded in December 1999, Plaintiff was permitted to submit requests for 10.5 hours of compensatory overtime each month which was then multiplied by 1.5 (i.e., 15.75 hours of compensatory time). Ac-

cording to Defendants, Plaintiff was also had access to a "K–9 fund," which covered such expenses as food and veterinarian visits. (Defs.' Br. at 7). Additionally, Defendants claim that Plaintiff "was permitted to submit requests for either compensatory time or overtime on a daily basis for those hours spent working with his K–9 partner that would not be classified as 'caring for and maintaining the police dog.'" (*Id.*). Plaintiff made such requests in 1997, 1998, and 1999.

[3] Defendants have not provided any proof of the minimum wage during the relevant time period. Notably, the Agreement does not provide for any change in Plaintiff's compensation in the event of a change in the minimum wage.

[4] Defendants contend 10.5 = 1.5 ((minimum wage multiplied by actual hours worked caring for dogs) divided by officer's actual wage).

[5] In fact, the Agreement itself makes no mention of any rate of pay. Rather, the Agreement calls for a credit into Plaintiff's compen-

argues that the Court cannot find the Plaintiff agreed to accept a lesser rate of pay and that he must be paid time-and-a-half for the hours spent caring for his dog. Both parties rely on *Albanese* to support their position.

In *Albanese,* Plaintiffs sought overtime compensation under the FLSA for work performed with their canine partners. There, the Police Benevolence Association ("PBA") and the defendants "negotiated and placed into the collective bargaining agreement a yearly stipend to compensate [the] plaintiffs for the additional work they performed as K 9 handlers." *Albanese,* 991 F.Supp. at 414. However, these dollar amounts were not "derived from any actual time plaintiffs spent" working with their canine partners. *Id.* Thus, the court found that the stipends did not relieve the defendants of their obligation under the FLSA to pay the plaintiffs for their overtime hours. Specifically, the court found that, while the stipends would serve as a credit against any award of overtime compensation for plaintiffs, plaintiffs were entitled to overtime pay for reasonable overtime hours worked. *See id.* at 422–424. However, because the parties had not agreed on an alternate rate, the court found that the plaintiffs had to be reimbursed at time-and-a-half their regularly hourly rate for those hours. *See id.* at 421 (indicating that where parties have reached no agreement, court may not "impose a rate of compensation for overtime hours that differs from one and one-half plaintiffs' regular hourly rate").

Defendants are correct that *Albanese* does not preclude the type of calculation that Chief Mulvihill allegedly performed here. The Court accepts the methodology that the Chief claims to have used as an

acceptable means of satisfying the FLSA. As indicated above, overtime dog care activities may be compensated at a rate lower than an employee's usual hourly rate. And a dog-handler may then be compensated at this rate for the reasonable hours of work performed. While generally, "employees are to be compensated for the actual hours they work," *Albanese,* 991 F.Supp. at 423 (citations omitted), *Albanese* and the Atlantic City Settlement discussed below require only that the overtime hours for which a police officer is compensated for dog care duties be a reasonable approximation of the amount of time spent on those tasks. And the Court finds no error in converting this dollar amount to compensatory paid time off-by dividing the product of hours worked and the minimum wage by Plaintiff's usual hourly rate to arrive at the number of hours Plaintiff would have had to work at his full rate to have earned this amount of money and multiplying that number 1.5.

However, while the Court accepts the use of this calculation, Defendants have not established that they in fact performed this or any other calculation to arrive at the 10.5 hours of compensatory time provided for in the Agreement. While Defendants may ultimately prove that they did perform such a calculation, they have not yet done so. On this record, the Court cannot find that the parties agreed upon any alternate rate of payment or that the number 10.5 relates to the methodology allegedly employed. Further, Defendants have not established that their estimation of the amount of time Plaintiff devoted to dog care and maintenance each month was a reasonable approximation of the amount of time Plaintiff actually spent on those activities. *Cf. Albanese,* 991 F.Supp. at

sation time account. That is, it provides for compensatory paid time off in lieu of over-

time.

422 (finding stipend did not satisfy FLSA where "plaintiffs and defendants had no agreement or understanding concerning the hours plaintiff spent off the clock caring for and maintaining their dogs").

This Court reads *Albanese* to require that overtime compensation for dog care be paid at an agreed upon rate for the reasonable number of hours of work performed. However, at this stage, the Court cannot find that the 10.5 hours of compensatory time Plaintiff received each month, like the stipend the officers in *Albanese* received each year, was anything other than a number pulled out of thin air. Accordingly, summary judgment for Defendants would be inappropriate.

## C. Good Faith Defense

Finally, Defendants argue that even if their conduct would otherwise be in violation of the FLSA, it is protected by the "Good Faith Immunity" provisions of the FLSA. 29 U.S.C.A. §§ 258, 259. Specifically, Defendants contend that, because Chief Mulvihill relied "on the action of the Department of Labor with their work in the Atlantic City K–9 settlement" (hereinafter "Settlement") in drafting the Agreement, they should not be held liable for violating the FLSA. Plaintiff responds that Defendant is not entitled to a good faith defense because the Agreement complies with neither the Department of Labor Letter Rulings nor the Settlement.

■ "By [their] terms, the [§ 258] and § 259 defense[s are] available only where a defendant can show good faith conformity with and reliance on any written administrative regulation, order, ruling, approval, or interpretation." *Bayles v. American Med. Response of Colorado,* 937 F.Supp. 1477, 1489 (D.Colo.1996). To assert a good faith defense under these sections, an employer bears the burden of proving: "(1) good faith reliance and (2) conformity

with the writing relied upon." *EEOC v. Baltimore and Ohio R.R. Co.,* 557 F.Supp. 1112, 1122 (D.Md.1983).

■ Here, there are issues of material fact as to both elements of the good faith defense precluding summary judgment. Defendants claim to have relied in good faith on two opinion letters published by the Department of Labor (Defs.' Br. Ex. M, N) and the Settlement, which was approved by the Department of Labor. Plaintiff, however, disputes "whether reliance on these materials was in good faith and further asserts that [his] employer's actions were not in compliance or conformity with the DOL materials in question." *Bayles,* 937 F.Supp. at 1489.

First, as to the good faith element, Plaintiff contends that Defendants acted in bad faith by inducing him to enter into the Agreement—an agreement in which he waived his rights under the FLSA. By its very nature, the "question of good faith is fact intensive and implicates a question of credibility for the trier of fact." *Id.* Further, as to the conformity prong, there is a question as to whether the Agreement comports with the DOL materials. As discussed above, the DOL opinion letters explain that an alternate pay rate may be used to compensate officers for dog care duties. Here, as indicated above, whether such a rate was agreed to is in contention. Accordingly, there is a material dispute as to whether the Agreement is consistent with the opinion letters. Additionally, it is not altogether clear that the Agreement is consistent with the Settlement. Plaintiff maintains that Defendants did not "utilize the terms and conditions of the Atlantic City Settlement to formulate the compensation contained in the Agreement as drafted." (Pl.'s Opp. at 20). Plaintiff correctly points out that while the Settlement provides for "a 7.5 hour day and one day of 'comp. time' per month for the K–9 Offi-

cer," the Agreement contains no such an arrangement. (*Id.*).

Because their are genuine issues regarding whether Defendants acted in good faith or conformed with DOL policy, summary judgment on the good faith defenses would be inappropriate.

## IV.

For the reasons set forth above, Defendant's Motion for Summary Judgment is denied. The Court will issue the appropriate order will be entered.