**Kent CHRISTOFFERSON, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 01–495C.**

United States Court of Federal Claims.

Feb. 28, 2005.

Jack W. Lee, San Francisco, California, for plaintiffs. John Ota, of counsel.

Steven J. Gillingham with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant. Rayna Eller, Esq., Suitland, Maryland, of counsel.

*OPINION*

BRUGGINK, Judge.

Pending in this federal employee overtime pay case are the parties' cross-motions for partial summary judgment and defendant's motion to dismiss. Plaintiffs' claims are brought under both the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (2000) ("FLSA"), and the Federal Employee Pay Act, 5 U.S.C. §§ 5541–5550a (2000) ("FEPA"). In dispute is the amount of overtime pay, if any, due plaintiffs arising out of work done to complete the 2000 census. Although the suit is brought on behalf of former census employees all over the country, the present motions focus on the Concord, California Local Census Office.

Plaintiffs' motion asks the court to hold the following: (1) the FLSA entitles plaintiffs classified as non-exempt to overtime pay for all hours worked in excess of eight hours in a single workday, even if they worked forty hours or less during the respective work week; (2) plaintiffs who worked as Field Operations Supervisors are non-exempt under the FLSA; and (3) plaintiffs Kenneth Owens and Edith Banducci are entitled to

equitable tolling of their claims, which might otherwise be time barred.

Defendant's motion for partial summary judgment asks the court to hold that: (1) plaintiffs classified as non-exempt are not entitled to FLSA overtime pay for hours worked in excess of eight hours in a single workday; (2) plaintiffs occupying Field Operations Supervisor and Special Places Operations Supervisor positions were properly classified as exempt pursuant to the FLSA's executive exception; and (3) the claims of plaintiffs Owens and Banducci are barred by FLSA's three-year statute of limitations.[1] In addition, defendant asks the court to dismiss the FEPA claims of the Field Operations Supervisors because they do not allege, and cannot demonstrate, that the claimed overtime was ordered or approved in writing as required by FEPA.[2]

The action was transferred to this judge on September 16, 2004. The matter has been fully briefed. Oral argument was heard on February 3, 2005. For the reasons set forth below, we deny plaintiffs' cross-motion for summary judgment. We grant defendant's cross-motion for summary judgment in part and deny it in part. Our ruling on defendant's motion to dismiss is deferred.

## BACKGROUND

Plaintiffs are former employees of the Census Bureau. They were hired to collect information for the 2000 census. The Bureau of the Census is charged with conducting the Constitutionally-mandated decennial census. To conduct the 2000 census, twelve temporary Regional Census Centers ("RCC") and 520 temporary Local Census Offices ("LCO") were opened. More than 800,000 temporary employees were hired to conduct the 2000 census. Although the group of census employees who have joined the suit consists of employees from all the various regional and local census offices, the parties

have, solely for the pending motions, focused on activities in the Concord, California LCO. The Concord LCO was part of the Seattle RCC. The Concord LCO opened on July 1, 1999, and closed on September 30, 2000. It employed 2,522 individuals as Field Operations Supervisors ("FOS"), Field Operations Supervisor Assistants ("FOSA"), Crew Leaders ("CL"), Crew Leader Assistants ("CLA"), and Enumerators. In addition, it employed one or more Special Places Operations Supervisors ("SPOS").

Decennial operations were performed in distinct phases, including a preparatory operation in 1999 in which addresses and locations of residences were updated and confirmed. In March 2000, questionnaires were sent out to housing units. If the occupants of the housing units did not respond, the LCO was responsible for collecting the requested information for each housing unit within a geographic area. This phase was known as the Nonresponse Follow–Up ("NRFU"). The NRFU was a labor-intensive operation scheduled to be completed in a short period of time.

After the NRFU was completed, the Coverage Improvement Follow–Up ("CIFU") phase was performed. During the CIFU, a select number of households were enumerated, including those that had not been previously identified or were identified as vacant during the NRFU. The CIFU was a smaller operation than the NRFU. Consequently, the temporary appointments of employees not chosen for the CIFU were terminated.

All plaintiffs were hired under excepted service, as temporary appointments, with specific not-to-exceed dates. Plaintiffs were hired only for the length of a particular decennial operation. They had no regularly set schedule during each administrative workweek. They were paid weekly for actual hours worked, they did not earn leave, and

---

1. Defendant's motion for partial summary judgment raised seven issues, some of which related to specific plaintiffs. At oral argument, however, defendant represented that there were only four main issues, all of which are addressed in this opinion. In any event, it is clear that the issues relating to specific plaintiffs are encompassed by the issues discussed.

2. FEPA requires that overtime be "ordered or approved." Regulations drafted by the Office of Personnel Management have added an additional requirement that overtime be "ordered and approved in writing."

their work hours could be altered to accommodate peak workloads.

The brunt of the collection work fell on the enumerators who filled out census questionnaires based on interviews with individuals at non-responsive households. The "enumeration" typically took place when most residents were likely to be home, *i.e.*, in the early morning or early evening hours on weekdays and all day on the weekends. The workday began when the enumerator left home to begin enumerating and ended when he or she returned home. All enumerators were hired for limited durations. Some enumerators were full-time employees, but most worked on a part-time basis. This position was designated non-exempt by the Office of Personnel Management ("OPM"), meaning the employees were eligible for FLSA overtime pay.

Supervising the enumerators were CLs and CLAs. They were also classified as non-exempt. They supervised a group of approximately twenty enumerators and were responsible for covering a geographic area called a Crew Leader District. They were responsible for meeting with their assigned enumerators to review and collect completed questionnaires and timesheets and to supply more questionnaires and supplies as needed. Meetings were usually held in the morning and/or evening. The CLs and CLAs also attempted to answer any questions or resolve any problems their enumerators might have.

Supervising the CLs and the CLAs were the FOSs and FOSAs. They were classified as exempt, and thus not entitled to overtime pay. They supervised up to twelve CLs and were responsible for covering a geographic area known as a Field Operations District. SPOS positions were roughly equivalent to FOS positions, but they did not cover a distinct geographic area. Instead, a SPOS' team attempted to locate people without a fixed place of abode. Almost all SPOSs, FOSs, FOSAs, CLs, and CLAs worked on a full-time basis.

At the Concord office, Timi Tumbaga, the Assistant Manager for Field Operations, supervised the eight FOSs. Ms. Tumbaga reported to Dolores Brooks, the Local Census Office Manager, the top official at the Concord office.

## DISCUSSION

### I.  Defendant's Motion to Dismiss the FEPA Claims

Defendant asks that plaintiffs' FEPA claims be dismissed for failure to state a claim in light of the Federal Circuit's ruling in *Doe v. United States,* 372 F.3d 1347 (Fed. Cir.2004). *Doe* overturned *Anderson v. United States,* 136 Ct.Cl. 365, 1956 WL 8341 (1956), in which the Court of Claims had held that OPM's written order requirement, currently set out in 5 C.F.R. § 500.111(c) (2002), did not protect the government from paying overtime it had orally ordered or approved. Defendant contends that plaintiffs' claims are based on an *Anderson*-type theory and that they fail to meet the writing requirement.

Plaintiffs have not alleged or offered evidence that they can satisfy FEPA's writing requirement. Instead, they request that the court delay its decision until the Supreme Court rules on the petition for writ of certiorari still pending in *Doe.* At oral argument, defendant agreed to plaintiffs' request for suspension of this issue. We therefore defer ruling until the Supreme Court has acted on *Doe.*

### II.  Cross–Motions for Summary Judgment

#### A.  *FLSA Overtime Pay for Hours Worked in Excess of Eight in One Day*

■ Both FLSA and FEPA provide frameworks for calculating overtime pay for federal employees. 29 U.S.C. § 201; 5 U.S.C. § 5542. Originally, federal employees' compensation was governed exclusively by FEPA. *United States Dep't of Air Force v. Fed. Relations Auth.,* 952 F.2d 446, 446 n. 1 (D.C.Cir.1991). In 1974, however, Congress extended FLSA to federal employees but exempted employees classified as executive, administrative, or professional. *Adams v. United States,* 391 F.3d 1212, 1214 (2004). The Civil Service Commission, which later became the Office of Personnel Management ("OPM"), was given the responsibility to administer FLSA as it applies to federal employees. 29 U.S.C. § 204(f); *Riggs v. United*

*States,* 21 Cl.Ct. 664 (1990). Further, OPM was given broad discretion to engage in rule-making with respect to the interplay between FLSA and FEPA. *Am. Fed'n of Gov't Employees v. OPM,* 821 F.2d 761 (D.C.Cir.1987).

In 1990, Congress amended FEPA to eliminate the requirement that FLSA overtime claims for federal employees be computed under both FEPA and FLSA. Federal Employees Pay Comparability Act of 1990, Pub.L. No. 101–509, § 210, 104 Stat. 1389 ("FEPCA"). FEPCA added subsection (c) to § 5542:

> (c) Subsection (a)[3] shall not apply to an employee who is subject to the overtime pay provisions of section 7 of the Fair labor [sic] Standards Act of 1938. In the case of an employee who would, were it not for the preceding sentence, be subject to this section, hours of work in excess of 8 hours in a day shall be deemed to be overtime hours for the purposes of such section 7 and hours in a paid non-work status shall be deemed to be hours of work.

The apparent purpose of FEPCA was to make it unnecessary for federal employees to bring overtime claims under both FLSA and FEPA for the same overtime hours. This amendment was short-lived, however. In 1992, Congress again amended § 5542 and, in doing so, modified subsection (c), resulting in its current form:

> (c) Subsection (a) [FEPA's general overtime provisions] shall not apply to an employee who is subject to the overtime pay provisions of section 7 of the Fair labor

[sic] Standards Act of 1938. In the case of an employee who would, were it not for the preceding sentence, be subject to this section, *the Office of Personnel Management shall by regulation prescribe what hours shall be deemed to be hours of work and what hours of work shall be deemed to be overtime hours for the purpose of such section 7 so as to ensure that no employee receives less pay by reason of the preceding sentence.*

Technical and Miscellaneous Civil Service Amendments Act of 1992, Pub.L. No. 102–378, § 2(41)(B) (changes italicized). In a prior case, this court interpreted the 1992 amendment as giving OPM general discretion to ensure that federal employees would not receive less under the FLSA computation of overtime than they would otherwise receive under FEPA. *Aaron v. United States,* 56 Fed.Cl. 98, 100 (2003).[4]

Pursuant to the new language of § 5542(c), OPM drafted 5 C.F.R. § 551.501 (2002), which is central to the parties' dispute. It appears in Part 551, labeled "Pay Administration Under the Fair Labor Standards Act." It states:

> (a) An agency shall compensate an employee who is not exempt under subpart B[5] of this part for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay, except that an employee shall not receive overtime compensation under this part—

---

**3.** Subsection (a) refers to the overtime provisions of FEPA, which generally entitle federal employees to overtime rates for hours "ordered or approved" in excess of forty in an administrative workweek or in excess of eight in a day. By its language, it is subject to numerous exceptions found in Title 5, Chapter 55, Subchapter V, of the United States Code (FEPA). These exceptions generally provide alternative compensation schemes.

**4.** At oral argument, counsel for both parties interpreted our prior decision in *Aaron* as standing for the proposition that the "subject to" language of § 5542(c) should be interpreted broadly to exclude from FEPA overtime pay all FLSA non-exempt employees because they potentially could recover under FLSA overtime pay provisions. *See Aaron,* 56 Fed.Cl. at 98. This interpretation

of the language in the statute may be correct, but it is not justified by our opinion in *Aaron.* As we noted, "It was not the application of FLSA to federal employees generally which preclude[d] Ms. White's claim." *Id.* at 101 n. 5. Her claim was barred, instead, by the applicable limitations period. Further, in *Aaron* the plaintiff was basing her overtime pay claims on hours worked in excess of forty in a workweek. This is an area in which FLSA and FEPA overlap. The plaintiff was thus clearly "subject to" FLSA overtime provisions. In sum, our opinion in *Aaron* was limited to the particular issues and circumstances present in that case.

**5.** Subpart B provides standards for determining whether a federal employee fits within one of FLSA's exemptions or exclusions.

(1) On the basis of periods of duty in excess of 8 hours in a day when the employee receives compensation for that duty under 5 U.S.C. 5544(c)(1) or (2) or 5545b;

(2) On the basis of hours of work in excess of 8 hours in a day that are not overtime hours of work under § 410.402 of this chapter, part 532 of this chapter and 5 U.S.C. 5544, or part 550 of this chapter;

(3) On the basis of hours of work in excess of 8 hours in a day for an employee covered by 5 U.S.C. 5544 for any hours in a standby or on-call status or while sleeping or eating;

(4) On the basis of hours of work in excess of 8 hours in a day for an individual who is not an employee, as defined in 5 U.S.C. 5541(2), for purposes of 5 U.S.C. 5542, 5543, and 5544;

(5) On the basis of hours of work in excess of 40 hours in a workweek for an employee engaged in fire protection or law enforcement activities when the employee is receiving compensation under 5 U.S.C. 5545(c)(1) or (2) or 5545b, or is not an employee (as defined in 5 U.S.C. 5541(2)) for the purposes of 5 U.S.C. 5542, 5543, and 5544;

(6) For hours of work that are not "overtime hours," as defined in 5 U.S.C. 6121, for employees under flexible or compressed work schedules;

(7) For hours of work compensated by compensatory time off under § 551.531 of this part; and

(8) For fractional hours of work, except as provided in § 551.521 of this part.

Based on this regulation, plaintiffs claim that enumerators and other non-exempt plaintiffs are entitled under FLSA to overtime compensation for hours worked in excess of eight hours in a single workday. Unlike FEPA, see § 5542(a), FLSA does not otherwise offer such an entitlement. Plaintiffs rely primarily on the first sentence of the regulation: "An agency shall compensate an employee who is not exempt under subpart B of this part for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay." Central to plaintiffs' argument is the proposi-

tion that this language does not require that the overtime be "ordered and approved in writing" as it would be under FEPA. Instead, they contend that FLSA's lower, "suffered and approved" standard applies. In other words, plaintiffs argue that the regulation creates a substantive right under FLSA to overtime pay for suffered or permitted overtime hours worked in excess of eight in a day.

Plaintiffs point out that § 551.501 appears in Part 551 of the Code of Federal Regulations, labeled as "Pay Administration Under the Fair Labor Standards Act." They also argue that their interpretation is consistent with Congress' intent, which was to charge OPM with administering FLSA among federal employees to "ensure that no employee receive[ ] less pay by reason of" the 1990 and 1992 amendments. § 5542(c).

Defendant disagrees with plaintiffs' interpretation, arguing that plaintiffs' interpretation of the regulation would impermissibly circumvent FEPA's requirement that overtime be ordered and approved in writing and would improperly expand FLSA beyond its plain language, which only provides for overtime compensation for hours in excess of forty in a single workweek. It interprets the regulation as merely a device to simplify the process of calculating overtime compensation under both FLSA and FEPA, as required by § 5542(c). Moreover, it points to the numerous exceptions to the first clause of subsection (a), which in sum "specifically exclude[ ] the payment of overtime on an eight-hour basis, except when an eight-hour basis is afforded by another provision of law." Def.'s Mot. Summ. J. at 29.

We agree with defendant. It is true that § 551.501 begins with the premise that "[a]n agency shall compensate an employee who is not exempt ... for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay." This language, taken alone, would seem to create an entitlement under FLSA for overtime compensation for hours in excess of eight in a single workday. Subsection (a)(2), however, goes on to exclude claims "[o]n the basis of

hours of work in excess of 8 hours in a day that are not overtime hours of work under ... part 550 of this chapter." Part 550 contains the OPM regulations which pertain to FEPA. OPM regulation 5 C.F.R. § 550.111(a)(1) (2002) makes clear that under FEPA "overtime work means work in excess of 8 hours in a day or in excess of 40 hours in an administrative workweek that is—(1) Officially ordered or approved." Section 550.111(c) further requires that "[o]vertime work ... may be ordered or approved only in writing." Although not a model of clarity, read as a whole, § 551.501(a)(2) thus excludes from FLSA coverage hours in excess of eight which do not qualify as overtime under FEPA. Under FEPA, overtime must be ordered and approved in writing. *See Doe*, 372 F.3d at 1361. Therefore, to make an eight-hour claim under the FLSA, the overtime must also have been ordered or approved in writing.

This interpretation is consistent with that of OPM, the agency charged with administering FLSA for federal employees. In Federal Personnel Manual ("FPM") Letter 551–24 (1992), OPM attempted to explain the changes in FLSA pay administration resulting from the 1990 FEPA Amendment. In Attachment 1 to the letter, under the heading "Hours of Work in Excess of 8 in a Day," suffered and permitted overtime work is clearly excluded: "Hours of work not subject to the 8–hour daily overtime standard ... include ... suffered or permitted overtime work." *See generally Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (stating that agency interpretations in opinion letters are not entitled to *Chevron*-style deference but may be used as persuasive authority).

Although the letter sought to explain the 1990 amendment, rather than the current version of the statute, it does show that OPM took the position that the 1990 amendment did not create an eight-hour FLSA claim unless it was "ordered or approved in writing" as required under FEPA. The letter has not been superceded or revoked.

Finally, the regulation conforms to Congress' apparent intent in the 1992 amendment, which was merely to ensure that federal employees did not lose the benefit of either statute. There is no evidence that Congress intended to create a new substantive right. FLSA itself remains unaltered.[6] Section 5542(c) essentially directs OPM to treat what would otherwise be FEPA overtime hours under § 5542(a) as FLSA hours. Entitlement to overtime pay for hours in excess of eight thus springs ultimately from FEPA's § 5542(a) and is subject to its limitations. A careful reading of § 551.501 shows that its eight enumerated exceptions have the effect of excluding claims for which § 5542(a) would not provide overtime compensation,[7] or for which FEPA (or some other statute) provides a specially enumerated alternative overtime compensation scheme,[8] or both. Only if the overtime hours do not fit within one of the enumerated exceptions does the regulation direct that overtime be paid at the higher FLSA rate (which may be higher because it is not capped at the GS–10 level). The regulation is thus consistent with FLSA itself and with Congress' intent that federal employees not receive less under the FLSA computation of overtime than they would otherwise receive under FEPA. *See Aaron*, 56 Fed.Cl. at 100.

---

**6.** FLSA provides:

Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

**7.** An example would be subsection (a)(2), which excludes hours not ordered or approved in writing.

**8.** An example would be subsection (a)(1), which excludes hours that would qualify under 5 U.S.C. § 5545(c)(1). Section 5545(c)(1) provides for annual premium pay of 25% of an employee's base pay, up to GS–10, for regularly scheduled standby hours spent at the employee's duty station. Section 5545(c)(1) directs that this compensation is in lieu of what the employee would receive under § 5542(a).

Plaintiffs' FLSA claims for overtime pay for hours worked in excess of eight per day are, therefore, dismissed. Their FLSA claims for hours worked in excess of forty in a single workweek are not affected by this ruling.

## B. *Exemption Status of FOSs and SPOSs*

█ The parties also disagree as to whether FOSs and SPOSs were properly classified under FLSA as exempt executive employees. The government has the burden of proving an FLSA exemption. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); 5 C.F.R. § 551.202(c) (2002). Further, the "exemption criteria must be narrowly construed to apply to only those employees who are clearly within the terms and spirit of the exemption." 5 C.F.R. § 551.202(b).

OPM regulations provide standards to determine whether an employee qualifies for exemption as an executive employee. 5 C.F.R. § 551.205 states that "[a]n *executive employee* is a supervisor or manager who manages a Federal agency or any subdivision thereof (including the lowest recognized organization unit with a continuing function) and customarily and regularly directs the work of subordinate employees and [whose work] meets [the primary duty test]." A threshold inquiry, therefore, is whether the FOSs and SPOSs managed a "recognized organizational unit."

In *Adams v. United States,* the Federal Circuit explained that a recognized organizational unit is "an established and defined organizational entity with regularly assigned employees." 350 F.3d 1216, 1223 (Fed.Cir. 2003) (quoting OPM Letter 551–7 § B(1)(b) (1975)); *see also* 5 C.F.R. § 551.104 (2002) (codifying this standard). Adopting the OPM standard, it further explained:

This requirement distinguishes supervisors who are responsible for planning and accomplishing a continuing workload from "leaders" who head temporary groups formed to perform a special assignment of limited duration, or who direct the work of other employees assigned to a project but do not exercise full supervision over such employees. Leaders of this nature do not

qualify for exemption as executive employees.

*Adams,* 350 F.3d at 1223; *see also* § 551.104 ("This distinguishes supervisors from leaders who head temporary groups formed to perform assignments of limited duration.").

In addition to managing a recognized organizational unit, the positions must satisfy the "primary duty" test:

(a) *Primary Duty Test.* The primary duty test is met if the employee—

(1) Has authority to make personnel changes that include, but are not limited to, selecting, removing, advancing in pay, or promoting subordinate employees, or has authority to suggest or recommend such actions with particular consideration given to these suggestions and recommendations; and

(2) Customarily and regularly exercises discretion and independent judgment in such activities as work planning and organization; work assignment, direction, review, and evaluation; and other aspects of management of subordinates, including personnel administration.

5 C.F.R. § 551.205(a). These characteristics of the job must also constitute the *primary* aspect of the position. "[A]n employee's primary duty may be the one he or she engages in during a majority of his or her work time; or, it may be the duty which is most important or significant, even though it occupies less than half of the employee's work time." *Adams v. United States,* 27 Fed.Cl. 5, 13 (1992), *rev'd on other grounds,* 178 F.3d 1306 (Fed.Cir.1998). Defendant, therefore, must show both that the FOSs and SPOSs managed recognized organizational units and that their work satisfied the primary duty test.

Plaintiffs argue that the undisputed facts show they did not manage recognized organizational units. Alternatively, they claim that summary judgment is precluded by genuine issues of material fact with respect to whether the primary duty test is met.

It is clear that there are disputed issues of material fact regarding the recognized organizational unit test. Mark A. Holdrege, the current Chief of the Human Resources Division at the Bureau of the Census, stated in

his affidavit, "The FOS districts were the lowest organizational unit in an LCO.... The FOS district continued for the duration of the decennial census operations." Holdrege Decl. ¶ 10. However, former FOS Gail Roche, in her deposition, testified that,

> The Field Operations Supervisor Districts changed according to the operation. During UAA, there was only one or two FOSs and hence, only one or two FOS districts. During NRFU, there were seven or eight FOS districts, one for each FOS. During CIFU, which followed NRFU, I believe there were about five FOS districts.... My FOS district changed substantially between NRFU and CIFU.

Roche Decl. ¶ 2. These conflicting statements speak directly to whether the FOS districts had a continuing function or whether they were merely temporary groups formed to carry out a special assignment of limited duration.

We also note that there are issues of material fact regarding whether the FOS and SPOS positions satisfied the primary duty test. The first prong of the primary duty test requires that an executive employee have actual authority to make certain personnel changes or the authority to suggest or recommend those actions with particular consideration given to those suggestions and recommendations. § 551.205(a)(1). Personnel changes include both the selection or removal of subordinates, as well as their promotion or increase in pay. *Angelo v. United States*, 57 Fed.Cl. 100, 114–15 (2003). In that connection, former FOS Conrad Dandridge stated in his deposition that:

> A It was my responsibility to recommend responsible enumerators to the position of crew leader assistants and recommend crew leader assistants for promotion to crew leaders.
>
> Q Did you have occasion to recommend that crew leader assistants be promoted to crew leaders?
>
> A Yes.
>
> Q Did that happen?

A Yes.

Q Would you say that your recommendation was the most important factor in someone getting a promotion?

A Yes.

Dandridge Dep. at 17–18. Regarding firing, he testified as follows:

> Q Did you have any influence in firing anybody, enumerators or crew leaders?
>
> A On two occasions I came very close to actually terminating a crew leader and an enumerator, but in both cases they resigned, and in both cases I had taken the issue to my immediate supervisor.
>
> Q So your role in the process was, what, being-actually doing the firing, making the recommendation or what?
>
> A If it had come to it, I would have had to fire them.

*Id.* at 16–17.

By contrast, former FOS Luita Lynch stated in her declaration, "As a FOS, I did not have the authority to recommend or suggest that anyone be hired or fired and I never did so. I also had no authority to recommend or suggest that anyone be promoted or given a raise, and I never did so." Lynch Decl. ¶ 2. Former FOS Roche made a similar declaration: "I did not have authority to recommend that someone be hired or fired .... In the case of an Enumerator under me who was suspected of falsifying census forms, he stopped showing up to receive new assignments, and therefore effectively quit. He was not fired." Roche Decl. ¶ 4. These conflicting declarations speak directly to whether FOSs and SPOSs had the actual authority to make personnel changes or the authority to "suggest or recommend such actions with particular consideration given to these suggestions and recommendations." § 551.205(a)(1).

Summary judgment is, consequently, inappropriate.[9] Both parties' motions for summary judgment on this issue are therefore denied. At trial, defendant bears the burden

9. The conflicting statements above were limited to FOS positions. At oral argument, however, the parties represented that SPOS positions were equivalent to FOS positions and did not address the positions separately. The conflicting statements noted above thus also create genuine issues of material fact regarding the SPOSs' exemption status.

of proving that the FOSs and SPOSs managed recognized organizational units and that their work met the primary duty test.

## C. Equitable Tolling

Defendant also seeks the dismissal of all or part of the FLSA claims of former SPOS Kenneth Owens and former CL Edith Banducci on timeliness grounds. Actions brought under the FLSA are subject to the statute of limitations set out in the Portal–to–Portal Pay Act ("Act"), codified at 29 U.S.C. §§ 251–262 (2002). The Act provides for a two-year statute of limitations for FLSA violations, unless the violation is willful. 29 U.S.C. § 255. Willful FLSA violations are subject to a three-year limitations period. *Id.* Without conceding that the three-year limitations period is applicable, defendant argues that plaintiffs' claims would fall outside even that more generous limitations period.

Plaintiff Owens' last day of employment with the agency was August 30, 2000. The accrual date of his last claim would have been September 2, 2000, the date on which he was last paid. He joined this lawsuit on June 23, 2003. Any claim accruing before June 23, 2000, therefore, falls outside the three-year limitations period, absent some grounds for tolling.[10]

Plaintiff Banducci's last work day was June 14, 2000. June 21, 2000, was the pay date for the previous pay period, which ended on June 10, 2000. She joined the lawsuit on June 23, 2003. Any claim arising from work on or prior to June 10, 2000, therefore, accrued on June 21, 2000, which falls outside the three-year limitations period. Any part of plaintiff Banducci's claim consisting of hours worked during her final four days of work likely would fall within the three-year limitations period as they would not have accrued until the corresponding pay date. Plaintiff has not made clear, however, wheth-

er she is claiming overtime for hours worked on those four days.

Plaintiffs do not dispute that a strict application of the three-year limitations period would bar at least most of plaintiffs Owens' and Banducci's claims. Instead, plaintiffs argue that the statute of limitations should be equitably tolled. They contend that the Supreme Court has made clear that there is a rebuttable presumption that equitable tolling is permitted and that this presumption also applies to suits against the United States. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Given the remedial nature of the FLSA statute, they urge that the circumstances justify the application of equitable tolling. Plaintiffs offer the affidavits of Owens and Banducci to show that they were "induced to believe that the federal government was acting lawfully when it refused to pay them and other allegedly nonexempt employees FLSA overtime unless they had prior written approval for the overtime work." Pls.' Mot. Summ. J. at 25. They thus ask that the statute of limitations be tolled until such time as plaintiffs had a reasonable opportunity to learn of their possible cause of action under the FLSA, i.e., when they spoke with their present counsel. Alternatively, they allege that this is at least a triable issue of fact.

Regarding whether equitable tolling is permissible, defendant responds that the presumption identified in *Irwin* is rebutted by the statute itself. It claims that Congress has already provided for equitable tolling by providing a three-year, as opposed to a two-year, limitations period for willful FLSA violations. *See United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (refusing to allow equitable tolling of limitations period in Internal Revenue Code because the statute set forth numerous explicit exceptions to its basic limitations period which could not be read to include an implied exception for equitable tolling).[11]

---

10. At oral argument plaintiffs' counsel appeared to concede that all of Mr. Owens' claims would be barred by the three-year statute of limitations absent equitable tolling. With the concurrence of defendant, however, he supplemented the record with the correct dates of Mr. Owens' employment by his letter of February 9, 2005.

11. Defendant also cites *Doyle v. United States,* 20 Cl.Ct. 495, 499 (1990), which held, "[I]n the case of willfulness, Congress eliminated the need for equitable tolling by expressly providing that the statute of limitations is extended to three years. Consequently plaintiffs are adequately protected under the FLSA." These statements are dicta,

Contrary to defendant's view, the weight of authority favors equitable tolling of FLSA claims. *See Hickman v. United States*, 43 Fed.Cl. 424, 427 (1999) (ruling that FLSA is subject to equitable tolling); *Udvari v. United States*, 28 Fed.Cl. 137, 139 (1993) (assuming equitable tolling of FLSA is permissible but declining to do so); *see also Henchy v. City of Absecon*, 148 F.Supp.2d 435, 438 (D.N.J.2001) ("Read into every federal statute of limitation, including the FLSA, the equitable tolling doctrine applies . . . ."); *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1463 (C.D.Cal.1996) (tolling FLSA limitations period); *Reich v. S. New England Telecomm. Corp.*, 892 F.Supp. 389, 404 (D.Conn.1995) (same); *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 328 (E.D.Pa.1984) (tolling the FLSA limitations period and stating that the equitable tolling doctrine is read into every federal statute of limitation).[12] *Brockamp*, moreover, is distinguishable. The tax code at issue set out the limitations period in a "highly detailed technical manner" and provided for "very specific exceptions" that "linguistically speaking, [could not] be read as containing implicit exceptions." *Brockamp*, 519 U.S. at 350–51, 117 S.Ct. 849. Further, the Court gave weight to the fact that requests for tolling of the limitations period would create "serious administrative problems" in light of the 200 million tax returns filed each year. *Id.* at 352, 117 S.Ct. 849. Those factors are not present here.

■ Nevertheless, we need not decide whether the limitations period for FLSA claims is subject to equitable tolling. Assuming for purposes of summary judgment that tolling is available, it is justified in only limited circumstances, which we find inapplicable here. As the Supreme Court has explained:

Federal Courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin*, 498 U.S. at 96, 111 S.Ct. 453. Our review of the cases cited by plaintiff suggests that equitable tolling has been allowed in only three circumstances: (1) a showing that there was a defective pleading filed during the statutory period; (2) a showing that the plaintiff has been induced or tricked by the defendant's misconduct into allowing the filing deadline to pass; or (3) a showing that the plaintiff's injury was inherently unknowable. *See Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 634, 373 F.2d 356 (1967); *Hickman*, 43 Fed.Cl. at 427 n. 4; *Udvari*, 28 Fed.Cl. at 139.

■ Plaintiffs did not file a timely but defective pleading. Instead, they argue that they were misled into allowing the filing deadline to pass by the government's statements and actions. Accordingly, plaintiffs must "either show that [the government] has concealed its acts with the result that plaintiff[s] w[ere] unaware of their existence or [they] must show that [their] injury was 'inherently unknowable' at the accrual date." *Japanese War Notes*, 178 Ct.Cl. at 634, 373 F.2d 356; *see also Udvari*, 28 Fed.Cl. at 139.

---

however, as the court went on to examine whether tolling was justified under the circumstances. Further, the court's statements appear to relate, not to whether FLSA may be equitably tolled at all, but whether it is allowable when it is shown that the government willfully violated FLSA's overtime pay provisions because willful violations are provided for in the statute itself. The court appeared to draw a distinction between cases in which plaintiffs attempt to toll the two-year limitations period as compared to cases in which they attempt to toll the three-year limitations period. Here, defendant has not conceded, and plaintiff has not argued, that the government

has acted willfully. In any event, we make no such distinction.

12. Plaintiff also cites *United States v. Cook*, 795 F.2d 987, 994 (Fed.Cir.1986). However, the court in *Cook* explicitly stated that it declined to rule on the issue because to do so would be tantamount to issuing an advisory opinion. The court merely stated that, "When and if the time comes, the district court will presumably apply the doctrine of equitable tolling consistently with Congress' intent in enacting the particular statutory scheme set forth in FLSA." *Id.*

Turning to the facts alleged, plaintiffs claim that they were repeatedly told by supervisors that "the government does not pay overtime." Plaintiffs point out that such statements plainly conflict with the law, as they were declarations that the government was not obligated to pay overtime under any circumstances. They also allege that the agency returned timesheets for "correction" if they evidenced overtime hours. Because of these actions, plaintiffs claim that they were justifiably misled into believing that the government was not required to pay them overtime, causing them to delay filing suit.

Even viewing the allegations in the light most favorable to plaintiffs, it is clear that they are not sufficient to justify equitable tolling. There is no evidence of concealment or secretive conduct which prevented plaintiffs from becoming aware of the alleged injury. *Japanese War Notes,* 178 Ct.Cl. at 634, 373 F.2d 356; *Udvari,* 28 Fed.Cl. at 139. It was plainly not inherently unknowable that the government would refuse to pay overtime. To the contrary, the facts alleged show that the government gave plaintiffs notice that it would not do so. The confusion lay in whether plaintiffs were legally entitled to overtime. The "[i]gnorance of rights which should be known," however, is not enough. *Japanese War Notes,* 373 F.2d at 359. The fact that the agency took (and still takes) a different legal position on entitlement to overtime pay is not enough to warrant tolling.

Plaintiffs' reliance on *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), and *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), is to no avail. In *Bowen* the Court affirmed the Second Circuit's tolling of the limitations period for appealing adverse determinations of the Social Security Administration where the government had "adopted an unlawful *unpublished* policy under which countless deserving claimants were denied benefits." 476 U.S. at 473–74, 106 S.Ct. 2022 (emphasis added). Quoting the circuit court, it stated, " 'Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action." ' *Id.* at 480–81, 106 S.Ct. 2022 (citation omitted). Unlike *Bowen,* however, plaintiffs here were clearly on notice that the government would not pay them overtime. They therefore knew the underlying facts concerning the cause of action.

*Glus,* likewise, does not support plaintiffs' position. In *Glus,* the plaintiff brought suit under the Federal Employer's Liability Act to recover damages for an industrial disease he allegedly contracted while working for his private employer. In that case, the Court endorsed the use of estoppel to bar the employer from asserting the statute of limitations as a defense because the employer's agents misrepresented the limitations period. The employer's actions "justifiably misled [plaintiff] into a good faith belief that" he could file his action anytime within seven years after accrual, rather than the three years provided by the statute. *Glus,* 359 U.S. at 235, 79 S.Ct. 760. The conduct amounted to an affirmative misrepresentation as to the limitations period, something not alleged here.

More relevant to the present circumstances is *Udvari v. United States,* 28 Fed. Cl. 137 (1993). That case involved a Secret Service employee who sued the federal government for FLSA overtime compensation. At issue was whether the facts justified tolling FLSA's two-year limitations period. The employee argued that tolling was justified because he did not learn of his potential claim against the government until he consulted with his attorney. The court, relying on *Japanese War Notes,* ruled that the government was not required to give actual notice to plaintiff of his potential claims. *Id.* at 140. Absent concealment by the government, the plaintiff had to show that his claim was "inherently unknowable." *Id.* He failed to do so.

Plaintiffs here have not alleged any concealment by the government, nor have they shown that their claims were inherently unknowable. To the contrary, plaintiffs knew they were working overtime and would not be paid for it. Plaintiffs, in effect, argue that the government had a duty to give them notice of potential claims. We must agree with the court in *Udvari* that no such duty

exists. If successful, this argument would mean that the limitations period would run indefinitely; equitable tolling, an exception, would swallow the rule. Based on the facts alleged, equitable tolling is not justified.

Accordingly, the FLSA claim of plaintiff Owens that accrued prior to June 23, 2000 is barred as untimely. Any FLSA claim of plaintiff Banducci springing from hours worked on or before June 10, 2000, is also barred as untimely. Any remaining FLSA claims are not barred as a result of this ruling. However, if plaintiffs seek to pursue claims for remaining time periods, they will have to prove that the government acted willfully and, therefore, that the three-year limitations period applies.

## CONCLUSION

For the reasons set out above, we deny plaintiffs' cross-motion for summary judgment. We grant defendant's cross-motion for summary judgment to the extent that plaintiffs' eight-hour FLSA claims are dismissed and that the claims of plaintiffs Owens and Banducci are partially dismissed as time barred, and deny it in all other respects. Ruling on defendant's motion to dismiss is deferred.